Case 1:24-cv-00121   Document 47   Filed on 05/01/25 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
May 01, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| WELLS FARGO BANK, § <br> NATIONAL ASSOCIATION § <br> *as Trustee for ABFC 2006-OPT2 Trust,* § <br> *Asset Backed Funding Corporation* § <br> *Asset Backed Certificates,* § <br> *Series 2006-OPT-2,* § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> LAURA LEDESMA CORTEZ, *et al.*, § <br>     Defendants. § | CIVIL ACTION NO. 1:24-cv-121 |

**REPORT AND RECOMMENDATION TO GRANT
DEFAULT JUDGMENT AND AWARD FEES**

**I.   Synopsis**

Wells Fargo seeks to foreclose on property in Cameron County, Texas after the debtor, Ruben Cortez, Sr. (now deceased) and his wife Laura Ledesma Cortez stopped paying their mortgage.  After notifying Laura and the heirs of Ruben, Sr. of the suit to foreclose, Laura and two of their children Jeremiah Sebastian Cortez and Lillian Yvette Cortez did not answer the lawsuit.  Therefore, Wells Fargo is entitled to default judgment against Laura, Jeremiah, and Lillian and ultimately, foreclose on the Cameron County property.

**II.   Jurisdiction**

The Court has subject matter jurisdiction pursuant to Pursuant to 28 U.S.C. 1332 based on the diverse citizenship of the parties and the matter in controversy exceeding the required amount.  Venue is appropriate in this division as it concerns real property located in the territorial jurisdiction served by this Court. 28 U.S.C. §1391(b)(2); *See also* Tex. Civ Prac. & Rem. Code § 150.011 (stating "actions for recovery of real property or an estate or

interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a party of the property is located").

Pursuant §636(b)(1), this case was referred to the undersigned United States Magistrate Judge to conduct all pretrial proceedings. Dkt. No. 6.

### III. Background

In their complaint, Plaintiff Wells Fargo Bank, National Association ("Wells Fargo") alleges that in 2006, Ruben Cortez ("Cortez, Sr.") as a borrower executed a Texas Home Equity Note. Dkt. No. 1, p. 5; Dkt. No 1-1. Pp. 1-4 (note). Concurrently, both Cortez, Sr. and his wife Laura Ledesma Cortez ("Laura") executed a Deed of Trust granting a security interest to Option One Mortgage Corporation. Dkt. No. 1, p. 5; Dkt. No. 1-1, pp. 5-22 (deed of trust). Taken together these two documents form the "Loan Agreement." The Loan Agreement concerns the real property and improvements commonly known as 19159 Chinaberry Rd., Harlingen, Texas 78552 and is more particularly described as follows:

> LOT TEN (10), TEXAS VETERANS ESTATES NO. ONE (1), CAMERON COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN CABINET 1, SLOT 725-A AND 725-B, MAP RECORDS OF CAMERON COUNTY, TEXAS (herein referred to as the "Property").

Dkt. No. 1, p. 3. In 2019, Option One Mortgage Corporation transferred and assigned the Loan Agreement to Wells Fargo in care of PHH Mortgage Corporation ("PHH"). Dkt. No. 1-1, p. 27-8. (assignment). PHH acted as Wells Fargo's mortgage servicer and collected payments on the Property. *Id.* Wells Fargo is the "current holder of the Note, and beneficiary of the Security Instrument." Dkt. No. 1, p. 6.

Cortez, Sr. passed away in 2022, and Laura defaulted on the Loan Agreement in early 2024. Dkt. No. 1-1, pp. 31-36. In July 2024, Wells Fargo through PHH, accelerated the Loan Agreement per its terms. Dkt. No. 1-1, pp. 37-40 (loan maturity notices).

2

Wells Fargo subsequently identified five heirs, in addition to Laura, who acquired Cortez, Sr.'s interest in the Property: Jeremiah Sebastian Cortez ("Jeremiah"), Lillian Yvette Cortez ("Lillian"), Amanda Lee Caldwell, Priscilla Marie Sanchez, and Ruben Cortez, Jr (collectively the "Defendants"). Dkt. No. 1, pp. 1-3. Service of process was effectuated as to each individual defendant. Dkt. Nos. 8-13. Defendants Amanda Lee Caldwell, Priscilla Marie Sanchez, and Ruben Cortez, Jr., each disclaimed their interest in the Property, and the Court issued an agreed judgment to that effect. Dkt. No. 34. The remaining defaulting defendants Laura, Jeremiah, and Lillian failed to answer or otherwise appear at any of the Court's scheduled hearings. *See* Minute Entries for October 16, 2024, and December 18, 2024. The Clerk of Court entered default against Laura, Jeremiah, and Lillian on January 16, 2025. Dkt. No. 36. About a month later, Wells Fargo filed a motion for default judgment against these defaulting defendants. Dkt. No. 37. The Court held an evidentiary hearing to prove up the default and provide a final opportunity for Laura, Jeremiah, and Lillian to appear; they remain absent. *See* Minute Entry dated April 3, 2025. At the hearing, the Court ordered supplemental briefing on attorneys' fees and court costs, and Wells Fargo then timely filed the requested briefing. *Id.*; Dkt. No. 46 (fee brief).

All told, Wells Fargo seeks a final judgment declaring:

(1) Wells Fargo is the mortgagee of the Security Instrument;

(2) The Deed of Trust is a valid and subsisting home equity lien against the Property;

(3) Ruben Cortez, Sr., deceased, is in default on the loan;

(4) Laura Ledesma Cortez, co-borrower, is in default on the loan;

(5) Wells Fargo is entitled to enforce its *in rem* interest against the Property through non-judicial foreclosure of the Property and under the terms of the Security Agreement, the Texas Constitution, and §51.002 of the Texas Property Code by conducting a public auction of the Property in with all regularly scheduled non-judicial foreclosure sales on the first Tuesday of the month;

3

(6) Wells Fargo is entitled to the outstanding balance of the Note, pre-judgment interest, and post-judgment interest from the date of judgment until paid, all of which is secured by the Security Instrument;

(7) Wells Fargo is entitled to attorneys' fees and court costs as allowed under the Note, Security Instrument, and Texas Civil Practices and Remedies Code;

(8) All conditions precedent to foreclose on the Property occurred; and

(9) Wells Fargo may further communicate with Defendants and all third parties reasonably necessary to conduct the foreclosure sale.

Wells Fargo provides copies of the Loan Agreement, Notice of Default, and Notice of Acceleration to demonstrate compliance with the procedural requisites contained in the Texas Property Code. See Dkt. No. 1-1, pp. 1-42.

## IV. Standard of Review for Default Judgment under Fed. R. Civ. P. 55(b)

Obtaining an entry of default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *Bieler v. HP Debt Exch., LLC*, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Defendants Laura, Jeremiah, and Lillian defaulted by failing to answer or otherwise defend against Wells Fargo's claim. Dkt. No. 37, p. 3. Entry of default against Laura, Jeremiah, and Lillian has been made by the Clerk. Dkt. No. 36. The only remaining question is whether the third step—entry of default judgment—is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Nevertheless, default judgment determinations are left to the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. First, the Court must determine if default judgment is appropriate under the circumstances, considering six factors:

4

>   (1) whether material issues of fact are at issue;
>   (2) whether there has been substantial prejudice;
>   (3) whether grounds for default are clearly established;
>   (4) whether default was caused by good faith mistake or excusable neglect;
>   (5) the harshness of the default judgment; and
>   (6) whether the court would feel obligated to set aside a default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, Courts must "assess the merits of the plaintiff's claims and find a sufficient basis in the pleadings for the judgment." *J & J Sports Prods., Inc. v. Guerrero*, No. 5:17-CV-92, 2018 WL 375391, at *2 (S.D. Tex. Jan. 11, 2018) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). By defaulting, a defendant is deemed to admit all "well-pleaded allegations" in the complaint but is "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu*, 515 F.2d at 1206). To determine whether an allegation is "well-pleaded," the Fifth Circuit looks to Federal Rule of Civil Procedure 8, which governs the sufficiency of a complaint. *Id.* at 498. Under that standard, "[d]etailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

"If the court determines that default judgment should be granted, the court must also determine the appropriate amount of damages." *People's United Equipment Finance Corp. v. Northern Yankee, LLC*, No. H-17-3528, 2018 WL 4334056, at *2 (S.D. Tex. June 6, 2018). Generally, a hearing is needed to make a monetary damage assessment. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It is the plaintiff's burden to provide an evidentiary basis for the damages sought. *BBVA USA v. Hall*, No. 5:19-CV-99, 2020 WL 9814212 at *1 (S.D. Tex. December 18, 2020).

   **V.   Analysis**

   **a.  The *Lindsey* factors apply in favor of a default judgment to Wells Fargo.**

In this case, the Court finds that the six *Lindsey* factors, outlined above, weigh in

favor of granting default judgment. First, there are no material issues of fact in dispute as Laura, Jeremiah, and Lillian have failed to file any responsive pleadings in this case. *See Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Second, there is substantial prejudice to Wells Fargo's interest in pursuing its rights resulting from Laura, Jeremiah, and Lillian's failure to respond. *See Insurance Co. of the West v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *1 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default have been clearly established due to Laura, Jeremiah, and Lillian's failure to answer or defend. *See Guerrero*, 2018 WL 375391 at *2. Fourth, there is no evidence before the Court indicating that Laura, Jeremiah, and Lillian's silence is the result of a good-faith mistake or excusable neglect. *Id*. (citing *Lindsey*, 161 F.3d at 893). Fifth, "the harshness of default judgment is mitigated as time passes without an appearance or filing from an opposing party," which in this case has been over nine moths. *Id.* Sixth, this Court is unaware of any facts which would give rise to good cause to set aside the default if challenged by Laura, Jeremiah, and Lillian. *Id.*; *See also CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (Fifth Circuit upheld district court's grant of default judgment after defendant failed to respond to summons within forty days).

Laura, Jeremiah, and Lillian were properly served in this action and failed to answer or otherwise defend themselves. Additionally, the grounds for default judgment are clearly established under the *Lindsey* factors. Thus, the Court recommends that a default judgment be granted in favor of Wells Fargo.

### b. Wells Fargo is entitled to judgment on their pleadings.

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC,* No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). However, "a defendant's default does not in itself warrant the court in entering a default judgment;" rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206.

### i. The claim against the primary note holders (deceased Ruben Cortez, Sr., and his wife, Laura) is sufficiently plead.

Texas law requires a party to secure a court order to foreclose on a home equity loan. Tex. Const. art. XVI § 50(a)(6)(C). Section 51.002 of the Texas Property Code provides for the sale of real property pursuant to a security instrument with a power of sale. A lien subject to non-judicial foreclosure "may also be foreclosed by judgment in an action for judicial foreclosure." Tex. R. Civ. P. 735.3.

Chapter 51 of the Texas Property Code provides the Texas law governing enforcement of a deed of trust which creates a lien against real property. *See* Tex. Prop. Code §§ 51.0001-.015. It defines a mortgagee to include "the grantee, beneficiary, owner, or holder of a security instrument." Tex. Prop. Code § 51.0001(4)(A)(C). A mortgagee has the authority to foreclose. *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 927 (N.D. Tex. 2014) ("Both the mortgagee and the mortgage servicer have the authority to foreclose.").

Wells Fargo produced a copy of the security instrument, as the current holder of the note and the current mortgagee, signed by Cortez, Sr., and Laura. The security instrument includes a power of sale clause. Dkt. No. 1-1., p.11 ¶ 21. To foreclose under a security instrument in Texas with a power of sale, the lender need only demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under article XVI § 50(a)(6) of the Texas Constitution; (3) there is a default under the note and security instrument; and (4) the party in default received notice of default and acceleration. *Huston v. U.S. Bank Nat'l Ass'n, et al.*, 988 F.Supp.2d 732, 740 (S.D. Tex. Dec. 19, 2013); Tex. Prop. Code § 51.002. Here, Wells Fargo produced sufficient evidence to the establish the debt, its creation as a lien under art. XVI, § 50(a)(6) of the Texas Constitution for home equity loans, a default on that debt, and their entitlement to foreclose on the unpaid debt as the mortgagee. As to Ruben Cortez, Sr., Wells Fargo submitted a copy of the notice of acceleration of loan maturity and notice of default provided via certified mail to him at the address of the

Property. Dkt. No. 1-1, pp. 40 (acceleration notice), 32-35 (default notice). As to Laura Ledesma Cortez, Wells Fargo submitted a copy of the notice of acceleration of loan maturity sent to her at the address of the Property. Dkt. No. 1-1, p.38. Wells Fargo also provided evidence to the Court at its default hearing that Ruben Cortez, Sr. is deceased. *See* Minute Entry dated April 3, 2025. Accordingly, as to both Cortez, Sr., and Laura, each element of a judicial foreclosure claim has been met.

### ii. The claim against heirs Amanda Lee Caldwell, Priscilla Marie Sanchez, and Ruben Cortez, Jr., was previously resolved in a partial agreed judgment.

On January 13, 2025, Defendants Amanda Lee Caldwell, Priscilla Marie Sanchez, and Ruben Cortez, Jr., along with Wells Fargo filed a Motion for a Partial Agreed Judgment wherein Amanda Lee Caldwell, Priscilla Marie Sanchez, and Ruben Cortez, Jr., disclaimed their interest in the Property. Dkt. No. 30. The District Court granted the parties joint motion, and Amanda Lee Caldwell, Priscilla Marie Sanchez, and Ruben Cortez, Jr., were terminated from the instant case. Dkt. No. 34.

### iii. The claim against heirs Jeremiah and Lillian is sufficiently plead.

Wells Fargo also seeks to foreclose on the interests in the Property of Defendants Jeremiah and Lillian as potential heirs of Ruben Cortez, Sr. Wells Fargo asserts that it has a statutory probate lien against the Property under the Loan Agreement and Texas Estates Code §§ 101.001(b) and 101.051, which provide that a decedent's estate and its debts immediately pass to the decedent's heirs. Dkt. No. 1, p. 6-8; *Ocwen Loan Servicing, LLC v. Deane*, Civil Action No. 4:15-CV-00682-O-BP, 2017 WL 6816499, at *3 (N.D. Tex. Dec. 1, 2017), R.&R. adopted by 2018 WL 309105 (N.D. Tex. Jan. 5, 2018). "The remedy of one holding an unpaid claim against the estate is to enforce a statutory lien against the property in the hands of the heirs, devisees, or legatees who receive estate property." *Deane*, 2017 WL 6816499, at *3 (internal citations omitted). As heirs-at-law, Jeremiah and Lillian's interests are subject to the Loan Agreement on the debt owed. While Wells Fargo

has not supplied evidence showing that it notified either of them of the default and acceleration, the Texas Property Code provides that a mortgage servicer:

> "shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien . . . ." Tex. Prop. Code Ann. § 51.002(d).

Accordingly, Wells Fargo has shown that it is entitled to a default judgment authorizing foreclosure on both Jeremiah and Lillian's interest in the Property. Wells Fargo provided evidence of notice to the debtors on the note, Cortez, Sr.[1] and Laura. Wells Fargo properly served Jeremiah and Lillian with this suit noticing them of the default on the property and the request for foreclosure. *See Singleton v. U.S. Bank Nat'l Ass'n*, No. 4:15-CV-100-A, 2016 WL 1611378, at *7 (N.D. Tex. Apr. 20, 2016); see, e.g., *U.S. Bank Nat'l Ass'n v. Chase*, No. 5:19-CV-229-M-BQ, 2020 WL 5048154, at *8 (N.D. Tex. Aug. 4, 2020) (Plaintiff "has shown that: a debt exists; the debt is secured by a lien; Defendants, Borrowers' heirs-at-law, are in default under the Loan Agreement; and it properly provided notice of the default and acceleration on the debt.").

Because the well-pled facts and the evidence establish Wells Fargo is entitled to foreclosure of the Property under the terms of the Loan Agreement and Tex. Prop. Code § 51.002, the pending Motion for Default Judgment against all remaining defaulting defendants Laura, Jeremiah and Lillian should be granted (Dkt. No. 37).

### iv. Wells Fargo is entitled to the outstanding balance of their note.

Wells Fargo seeks a final judgment declaring their security interest in the Property entitles them to the outstanding balance of the Note, pre-judgment interest, and post-

---

[1] *See Morgan v. Chase Home Fin., LLC*, 306 F. App'x 49, 55–56 (5th Cir. 2008) (agreeing with district court's conclusion that Texas law did not require mortgage servicer, in the event of the debtor's death, "to conduct some level of investigation to determine the legal heirs for purposes of proper notification prior to foreclosure"); *Deutsche Bank Tr. Co. Ams. for Residential Asset Mortg. Prods., Inc. v. Comstock*, Civil Action No. 3:16-CV-3210-G-BH, 2018 WL 3352992, at *9 (N.D. Tex. June 11, 2018) (finding mortgage servicer had satisfied fourth element (notice) necessary to obtain foreclosure through a power of sale by notifying the debtor, who was deceased, of the default and acceleration), *R. & R. adopted by* 2018 WL 3344374 (N.D. Tex. July 9, 2018).

judgment interest from the date of judgment until paid. Dkt. No. 37-2, p. 2. Wells Fargo claims the principal amount of the loan secured by the Property is $64,800.00 *Id.* This amount is supported by the Note and Security Instrument. (Dkt. No. 1-1, pp 2, 6). Thus, Wells Fargo is entitled to a declaration that the outstanding balance is secured by the Security Instrument.

### v. Wells Fargo is entitled to pre-judgment interest of 11.750%.

Under 28 U.S.C. § 1961(a), in diversity cases, pre-judgment interest is calculated under state law. *See Bos. Old Colony Ins. v. Tiner Assocs.*, 288 F.3d 222, 234 (5th Cir. 2002). In Texas, breach of contract cases are governed by Texas common law, which "allows prejudgment interest to accrue at the same rate as post-judgment interest." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002). The Texas Finance Code specifies post-judgment interest accrues "at a rate equal to the lesser of: (1) the rate specified in the contract ... or (2) 18 percent a year." Tex. Fin. Code § 304.002.

Here, the Home Equity Note clearly provides that, in the event of a default, "the Note Holder, may except as otherwise required by applicable law, require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount." Dkt. No. 1-1, p. 2. The note further specifies that interest on the unpaid principal balance will be assessed "at a yearly rate of 11.750% … both before and after any default." *Id.*

Pre-judgment interest starts accruing on (a) the 180th day after the date the defendant receives written notice of a claim or (b) the date the suit was filed, whichever is earlier, and stops accruing on the day preceding the date of Final Judgment. See *Mason v. Mason*, No. 07-12-007-CV, 2014 WL 199649, at *7, (Tex. App.-Amarillo, Jan. 13, 2014); Tex Fin. Code. § 304.104. Wells Fargo filed its Complaint on August 13, 2024. Dkt. No. 1. Laura, Jeremiah, and Lillian received notice of the claim via service of process on August 21, 2024. Dkt. Nos. 8, 9, 12. Thus, Wells Fargo may recover pre-judgment interest

10

from August 14, 2024 (the date of the filing of the suit is the earliest date in this case), until the date of final judgment, calculated at the rate of 11.750% per annum.

### vi. Wells Fargo is entitled to post-judgment interest at the statutory rate.

Under 28 U.S.C. § 1961(a), in diversity cases, "[t]he post-judgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)." *Celtic Marine Corp. v. James C. Just. Cos., Inc.,* 593 F. App'x. 300, 305 (5th Cir. 2014) (quotation omitted). 28 U.S.C. § 1961(a) sets post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." Parties can contract around the statutory rate, but to do so, the contract "must us[e] clear, unambiguous, and unequivocal language." *Celtic,* 593 F. App'x. at 305. Here, the contract does not explicitly reference post-judgment interest. (While the contract is clear as to pre-judgement interest as discussed above, it is unclear as to post-judgment interest). Paragraph 2 of the Note provides that "the interest required by this Section 2 [11.750%] is the rate I will pay both before and after any default." This provision does not make it "clear, unambiguous, and unequivocal" that it refers to the post-judgment interest rate.[2] Therefore, this Court recommends the District Judge consult the Federal Reserve Statistical Release table of selected interest rates to determine the appropriate post-judgment interest rate for this action depending on when judgment is entered.

### vii. The Court recommends the grating of Wells Fargo's Motion for Attorneys' Fees and Court Costs, Dkt. No. 46.

On April 3, 2025, this Court ordered Wells Fargo to submit a supplemental brief on the award of attorneys' fees and court costs. *See* Minute Entry dated April 3, 2025. In

---

[2] The Fifth Circuit has found that parties do not "clearly, unambiguously, and unequivocally mean [] to refer to post-judgment interest except where they have expressly referred to post-judgment interest." *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 459 (5th Cir. 2013); *See also Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993) (Language in the Note providing an interest rate "both before and after judgment" permissible).

11

response, Wells Fargo filed a motion for attorneys' fees and costs, including an affidavit and supporting materials. Dkt. No. 46.

As this case is in federal court based on diversity jurisdiction, Texas law is applicable to the award of attorney fees. See *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, a party may recover attorney fees only when allowed by statute or contract. *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 120 (Tex. 2009). In Texas, attorney fees may be recovered under mortgage contracts. *See Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1040 (5th Cir. 2014) (analyzing Texas law to determine that motions for attorney fees provided by mortgage contracts are permissible).

In its motion for attorney fees and costs, Wells Fargo seeks "reasonable attorneys' fees, paralegals' fees, and costs totaling $9,549.55" to be recovered from defaulting Defendants Laura, Jeremiah and Lillian "as a further obligation secured by the property at issue under the Note and Deed of Trust made the basis of this suit." Dkt. No. 46, p. 9.

"Although courts should consider several factors when awarding attorney fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.–Houston [14th Dist.] 2012, no pet.).

In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney qualifications, reasonableness of the fees, and the basis for the opinion may be sufficient to support an award of attorney fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, no writ) ("Where ... trial counsel's testimony concerning attorney fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law.

This is especially true where the opposing party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so."). "The court, as a trier of fact, may award attorney fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

Here, Wells Fargo submits a declaration from its counsel, as well as its corresponding billing records. *See* Dkt. No. 46-1. Under Texas law, Wells Fargo's evidence is "legally sufficient" for an award of attorney fees. *See In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App–Tyler 2009, no pet.) ("attorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to [the party] in this matter, and those services were reasonable, necessary, and customary. Thus, [the party's] attorney affidavit sufficiently established reasonable attorney fees and is legally sufficient to support the trial court's award of attorney fees."). The amount of attorney fees Wells Fargo seeks is reasonable as a matter of law.

Furthermore, because this is a breach of contract claim, Texas law allows the contract to govern the recovery of costs. See *Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437,* 445, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987)) and *Peak Tech. Servs. v. Land & Sea Eng'g, LLC*, No. H-10-1568, 2012 U.S. Dist. LEXIS 109628 (S.D. Tex. Aug. 6, 2012). Here the contract contemplates payment of costs and expenses in enforcing the Note and secured by the Note. Dkt. 1-1, p. 3. Accordingly, this Court recommends Wells Fargo's Motion for Attorneys' Fees and Court Costs be granted as a charge added to the total debt owed against the Property.

### viii. A damages hearing is unnecessary.

Wells Fargo does not seek monetary damages against Laura, Jeremiah, and Lillian, but instead seeks a final judgment declaring their interest in the Property is terminated and allowing foreclosure. Because Wells Fargo is not seeking liquidated damages, and Wells

Fargo's claims are proved by the documents that make up the Loan Agreement, no hearing is therefore necessary to establish the amount of damages.

## VI. Recommendation

For the reasons stated above, this Court recommends Wells Fargo's motions seeking default judgment and attorney's fees and costs (Dkt. Nos. 37, 46) be **GRANTED**. This Court recommends a finding that:

(1) Wells Fargo is the mortgagee of the Security Instrument;

(2) The Deed of Trust is a valid and subsisting home equity lien against the Property;

(3) Ruben Cortez, Sr., deceased, is in default on the loan;

(4) Laura Ledesma Cortez, co-borrower, is in default on the loan;

(5) Wells Fargo is entitled to enforce its *in rem* interest against the Property through non-judicial foreclosure of the Property;

(6) Wells Fargo is entitled to the outstanding balance of the Note, pre-judgment interest, and post-judgment interest from the date of judgment until paid, all of which is secured by the Security Instrument on the Property;

(7) Wells Fargo is entitled to attorneys' fees and court costs as allowed under the Note, Security Instrument, and Texas Civil Practices and Remedies Code;

(8) All conditions precedent to foreclose of the Property occurred; and

(9) Wells Fargo may further communicate with Defendants, and all third parties reasonably necessary to conduct the foreclosure sale.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). This Report and Recommendation shall serve as notice of procedural defaults, and the objection period shall

serve as opportunity to respond to these defects. *Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

The Clerk of Court is **DIRECTED** to send a copy of this Report and Recommendation to the remaining defendants: Laura Ledesma Cortez, Jeremiah Sebastian Cortez, and Lillian Yvette Cortez via regular and certified mail at the address of service.

Signed on May 1, 2025.

*Karen Betancourt*
Karen Betancourt
United States Magistrate Judge